MOORMEISTER v. DEPARTMENT OF REGISTRATION OF STATE et al.

No. 5030.   Decided June 7, 1930.   (288 P. 900.)

*Irvine, Skeen & Thurman,* of Salt Lake City, for plaintiff.

*George P. Parker,* Attorney General, and *Byron D. Anderson,* Deputy Attorney General, for defendants.

ELIAS HANSEN, J.

The plaintiff presented to and filed in this court his verified petition for a writ of prohibition whereby he seeks an order of this court prohibiting the defendants from proceeding further in an action whereby it is sought to revoke, because of his alleged unprofessional conduct, the license of the plaintiff which authorizes him to practice his profession of physician and surgeon in this state. This court

148

issued a writ prohibiting the defendants from further proceeding in the action until this court ordered otherwise, and further directed the defendants to appear and show cause why the writ should not be made permanent. The defendants appeared and demurred to the petition upon the ground that "plaintiff's petition does not state facts sufficient to constitute a cause of action against the defendants or to entitle plaintiff to the relief prayed for therein."

The facts which form the basis of this proceeding are not in dispute. They are as follows:

Plaintiff is, and at all times since 1908 has been, a duly licensed and practicing physician and surgeon in this state. On January 31, 1930, a verified complaint was filed with the director of the department of registration of the state of Utah. The complaint charges the plaintiff herein with unprofessional conduct, in that on October 25, 1929, at Salt Lake county, Utah, he performed a criminal abortion. Immediately after the complaint was filed the defendant S. W. Golding, director of the department of registration of the state of Utah, issued a citation. The citation is in the usual form. It informs the defendant in that action, plaintiff in this proceeding, of the nature of the charge filed against him, of the time within which he must answer the charge, and of the time when and place where a hearing will be had on the complaint.

This proceeding was commenced before the time arrived for the hearing before the department of registration on the complaint so filed.

The only question here presented for determination is one of procedure. The plaintiff contends that no proceeding before the department of registration for the revocation of a license of a physician and surgeon may be instituted until five designated practitioners of medicine and surgery shall have consented in writing that such proceedings be instituted. The defendants contend that the consent of the five designated physicians and surgeons

is not a prerequisite to the institution of a proceeding for the revocation of the license of a physician and surgeon.

The law applicable to the question which divides the parties is contained in chapters 91 and 130, Laws of Utah 1921, and chapter 49, Laws of Utah 1923, and amendments thereto. The present state of the law, so far as material to the determination of the question here presented, provides:

Chapter 130, Laws Utah 1921, § 1: "There is hereby created a department of the state government to be known as the 'Department of Registration.'"

### Chapter 91, Laws Utah 1921, § 13:

"The department of registration must refuse a license to any applicant not of good moral character or who has been guilty of 'unprofessional conduct,' as defined in this Act; but, before such refusal, the applicant must be cited to appear before the said department by citation signed by the director of registration.

"No citation shall be issued except upon sworn complaint filed with the director of registration and setting forth such particular acts constituting such immorality or 'unprofessional conduct.' On the filing of such complaint, the director must forthwith issue a citation and make same returnable at any time within thirty days next after the filing of the complaint. Such citation shall notify the applicant of the time and place when and where the matter of such immorality or such 'unprofessional conduct' shall be heard, the particular immorality or 'unprofessional conduct' with which the applicant is charged and that the applicant shall file his written answer under oath within twenty days after the service on him of such citation; or default will be taken against him, and his application for license refused.

"The attendance of witnesses at such hearing may be compelled by subpoenas issued by the director under seal, and said director shall in no case refuse to issue any such subpoena upon a fee of twenty cents being paid him for each subpoena by the applicant. Said citation and subpoena and all the provisions of the statutes of this state then in force relating to subpoenas are hereby made applicable to the subpoenas provided for herein."

### Chapter 91, Laws Utah 1921, § 16, as amended by chapter 58, Laws Utah 1923:

"Whenever any licensed practitioner under this Act is guilty of 'unprofessional conduct,' as the same is defined herein, then the license

of such practioner shall be revoked or cancelled by the department of registration, and the procedure provided for by Section 13 of this Act, relating to the refusal of the department of registration to issue licenses, is hereby made applicable to the revocation of licenses."

Laws Utah 1921, c. 130, § 3, as amended by Laws Utah 1923, chapter 49, 1:

"The department of registration shall, whenever the several laws regulating professions, trades and occupations which are devolved upon the department for administration so require, exercise, in its name, but subject to the provisions of this Act, the following powers:

"(a) Conduct examinations to ascertain the qualifications and fitness of applicants to exercise the profession, trade or occupation for which an examination is held; and pass upon the qualifications of applicants for reciprocal licenses, certificates and authorities;

"(b) Prescribe rules and regulations for a fair and wholly impartial method of examination of candidates to exercise the respective professions, trades or occupations;

"(c) Prescribe rules and regulations defining, for the respective professions, trades and occupations, what shall constitute a school, college or university, or department of a university, or other institutions, reputable and in good standing and to determine the reputability and good standing of a school, college or university, or department of a university, or other institution, reference to a compliance with such rules and regulations;

"(d) Adopt rules providing for and establishing a unifrom and reasonable standard of maintenance, instruction and training to be observed by all schools for nurses which are to be deemed reputable and in good standing and to determine the reputability and good standing of such schools for nurses by reference to compliance with such rules and regulations;

"(e) Establish a standard of preliminary education deemed requisite to admission to a school, college or university, and to require satisfactory proof of the enforcement of such standard by schools, colleges and universities;

"(f) Conduct hearings on proceedings to revoke or refuse renewal of licenses, certificates or authorities of persons exercising the respective professions, trades or occupations, and to revoke or refuse to renew such licenses, certificates or authorities. Provided that appeal to the courts may be had.

"None of the above enumerated functions and duties shall be exercised by the department of registration, except upon the action and

report in writing of persons designated by the director of registration to take such action and to make such report, for the respective professions, trades and occupations as follows: * * *

"The action or report in writing of a majority of the persons designated for any given trade, occupation or profession, shall be sufficient authority upon which the director of registration may act. * * *

"For the practitioners of medicine and surgery in all their branches, and for the practice of obstetrics only, five persons each of whom shall be a licensed practitioner of medicine and surgery in this State, and a graduate of a (    ) regularly chartered medical (    ) college (    ) in good standing. (    ) For the osteopathic physician and surgeon, three members each of whom shall be a graduate of a regularly chartered college of osteopathy in good standing and licensed in this State, for the practitioner of the treatment of human ailments without the use of medicine and surgery except as otherwise provided, two of the number appointed to examine physicians and surgeons, to be designated by the director, and three persons from the particular school for treating human ailments for which the applicant desires a license to practice. * * *

"In making the designation of persons to act for the several professions, trades and occupations, the director shall give due consideration to recommendations by members of the respective professions, trades and occupations and by organizations therein, and the names of all persons so designated shall be submitted to the governor for confirmation or rejection, if confirmed, they shall serve until removed by the director.

"Whenever the director is satisfied that substantial justice has not been done either in an examination or in the revocation of or refusal to renew a license, certificate or authority, he may order reexaminations or rehearings by the same or other examiners."

It will be observed that many of the functions and duties of the department of registration may not be exercised "except upon the action and report in writing of persons designated by the director of registration to take such action and to make such report." The plaintiff contends that the department of registration may not conduct hearings on a proceeding to revoke a license of a physician and surgeon without the consent of the designated persons, and that the consent of the designated persons is neecssary to the initiation of a proceeding to revoke a license. The language

of the act here under review is not susceptible of the construction contended for by the plaintiff. The filing of a complaint and the issuance of a citation or a subpoena are no parts of the conducting of a hearing on a proceeding to revoke a license. Under the practice which prevails in this and other jurisdictions, the filing of a complaint and the issuance of a citation are ministerial acts usually performed by the clerks of our courts or other judicial or quasi-judicial tribunals. The conducting of a hearing on the issues joined by the pleadings is a judicial or quasi-judicial function. There is no language in any of the acts here involved which indicates who may or may not swear to a complaint charging a physician and surgeon with unprofessional conduct. In the absence of any such provision, a complaint may be sworn to by any one who may have knowledge of the facts. The law expressly imposes on the director of registration the duty of issuing a citation when a complaint is filed charging a physician and surgeon with unprofessional conduct. The citation must be issued forthwith and shall be made returnable at any time within thirty days.

It is further urged on behalf of the plaintiff that the five designated physicians and surgeons provided for in the act are required by the act to perform functions similar to those of a grand jury or a committing magistrate in a prosecution for a felony, and that such physicians and surgeons shall not act as the triers of the fact upon the hearing. The law is silent as to when or how the five designated physicians and surgeons shall secure the information necessary to form the basis of their action and written report. It is clear that the action and written report of the five designated physicians and surgeons is a vital part of the proceedings to revoke the license of a physician and surgeon. The license of a physician and surgeon cannot be revoked unless such revocation be recommended by a majority of the five designated physicians and surgeons. Obviously the physicians and surgeons who are called upon to

decide whether the license to practice medicine and surgery of one of the members of their profession shall or shall not be revoked are entitled to all of the available information before reaching a conclusion. The only means that the law provides for obtaining such information is at the hearing had before the director of the department of registration. We are thus of the opinion that in a proceeding such as this the five designated physicians and surgeons shall hear and determine the issues presented by the pleadings and make their written findings upon the evidence adduced at the hearing held before the director of the department of registration.

Having arrived at the foregoing conclusion, it is probably not necessary to further discuss the construction that should be given to that part of the act which plaintiff contends should be so construed that the department of registration may not conduct a hearing for the revocation of a license of a physician and surgeon except upon the action and report in writing of the five designated physicians and surgeons. At the time the plaintiff applied for a writ of prohibition, the hearing upon the complaint charging plaintiff with unprofessional conduct had not begun. No time is fixed by the act when the action shall be taken and the written report made by the five designated physicians and surgeons as to the "conducting of hearings" on proceedings to revoke or refuse renewal of licenses. The most that can possibly be said is that such action shall be taken and such written report made before the hearing is actually begun. It frequently occurs that in construing a legislative enactment, words will be given an enlarged, restricted, or modified meaning to effectuate the legislative intent. It would be an unusual and useless procedure to require the five designated physicians and surgeons who are called upon to try a charge made against a physician and surgeon to take action and make a written report before they proceed to try such charge. We are of the opinion that the act contemplates that the five designated physi-

cians and surgeons shall take action and make a written report on the charge made against an accused after and not before the hearing is concluded.

Writ denied.

STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.

CHERRY, C. J.

I concur.

In brief, the statute confers upon the department of registration the power to "conduct hearings on proceedings to revoke * * * licenses, * * * and to revoke * * * such licenses," and thereafter provides that "none of the above enumerated functions and duties shall be exercised * * * except upon the action and report in writing of persons designated by the director of registration to take such action and make such report," etc.

The contention is that no hearing may be conducted until after such action and report. This is based upon the assumption that the conducting of a hearing is a function or duty within the meaning of the statute. The contention leads to absurd results and must be rejected. It is plain from a consideration of the whole act that the purpose of the Legislature was to provide a method of revoking licenses, and to authorize revocation only upon the action and report of a board of persons of the particular profession involved. The action and report of the professional board, unless preceded by a hearing, would be a farce. And a hearing by the board to determine whether a hearing should be had before itself would be most absurd. The necessary construction of the statute is that it contemplates a hearing conducted by the department and before the professional board, and that no license can be revoked except upon the action and report of a majority of the persons designated

as the professional board. To arrive at this result it is necessary to conclude that the power to "conduct hearings on proceedings to revoke or refuse renewal of licenses" is not such function or duty, within the meaning of the statute, which may not be exercised except upon the action and report of the persons designated as the professional board. The function or duty so limited is the power to revoke or refuse the renewal of licenses, not the conducting of hearings on proceedings therefor. While this interpretation is not in strict accordance with the letter of the statute, it is consistent with the spirit and purpose of the law, and necessary to prevent confusion and absurdity and the frustration of the legislative intent.